```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 11-20504-Civ-SEITZ
                                         (09-20523-Cr-SEITZ)
                                    MAGISTRATE JUDGE P. A. WHITE
ALYD DAZZA,                     :

     Movant,                    :         REPORT OF
                                       MAGISTRATE JUDGE
v.                              :

UNITED STATES OF AMERICA,       :

     Respondent.                :
_____
```

## I. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to Title 28, Section 2255, attacking his sentence for Medicare fraud and money laundering following his guilty plea in criminal case number 09-20523.[1]

The Court has reviewed the motion to vacate (Civ-DE# 1), Government's response and appendixes of exhibits (Civ-DE# 8, 13), Dazza's reply (Civ-DE# 11), the Presentence Investigation Report ("PSI"), and all pertinent portions of the underlying criminal file.

## II. Claims

Construing the *pro se* movant's arguments liberally, he appears to raise the following claims in his Section 2255 motion:

---

[1] Dazza's guilty plea also covered an obstruction of justice case, number 09-20609, in which he was charged with presenting false information to FBI agents during his cooperation in the investigation of the Medicare/money laundering case. See (PSI ¶¶ 64-69). Dazza does not presently attack his sentence in case number 09-20609, accordingly, it will be discussed in this Report only insofar as pertinent to the procedural and factual background of the case.

1

1. Counsel was ineffective for withdrawing a meritorious objection to the PSI's base offense level of eight rather than six for money laundering;

2. Counsel was ineffective for withdrawing a meritorious objection to the PSI's two-level increase for a multiple count adjustment, and failing to insist that the counts be grouped; and

3. Counsel was ineffective for failing to present mitigating factors warranting a downward departure, such as Dazza's extraordinary acceptance of responsibility.[2]

(Civ-DE# 1).

### III. Procedural History

The relevant procedural history is as follows. Dazza was charged along with seven co-defendants for multiple offenses related to Medicare fraud in case number **09-20523**. (09-20523 Crim-DE# 40 at 107). The charges relating to Dazza are: Count 2, conspiracy to commit health care fraud (18 U.S.C. § 1349); and Count 11, money laundering conspiracy (18 U.S.C. § 1956(h)).

On July 21, 2009, Dazza and two of the Medicare fraud co-defendants were indicted for making false statements in case number **09-20609**. Dazza was accused of obstructing the FBI by withdrawing funds then attempting to cover his acts with a forged document. See (PSI ¶¶ 64-69). Specifically, Dazza was charged with: Count (2) knowingly presenting a forged document to the United States (18 U.S.C. § 1001(a)(2)). (09-20609 Crim-DE# 7).

In a written plea agreement, Dazza agreed to plead guilty to

---

[2] Dazza appears to have abandoned this claim in his reply. (DE# 11). However, the undersigned will briefly address the merits of Claim (3) in an abundance of caution.

Counts (2) and (11) in case 09-20523 (conspiracy to commit health care fraud and money laundering), as well as Count (2) in case 09-20609 (obstruction). (09-20523 Crim-DE# 135). The agreement states the PSI will compute advisory sentence, the applicable guidelines will be determined by the Court, and that the Court may depart and is not bound by the guidelines. The agreement also states that Dazza faced a maximum sentence of ten years with three years of supervised release for the offenses in case 09-20523, and five years with up to three years supervised release for case 09-20609. The Government and Dazza agreed to jointly recommend a sentence within the guideline range. The agreement includes an appellate waiver. It also makes the following non-binding recommendations with regards to the PSI:

> 7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:
>
> Health Care Fraud Conspiracy:
> ...
> (b) <u>Actual or Intended Loss</u>: That the defendant's offense level shall be increased by eighteen (18) levels pursuant to Section 2B1.1(b)(1)(J) because the actual or intended loss related to the health care fraud scheme was greater than $2,500,000, but less than $7,000,000. **This figure reflects the fraudulent billings for health care items and services, known as of the date of this agreement, that were submitted to Medicare Advantage programs by Magestic Group Service, Inc. and Ziallet Services, Inc.**
> (c) <u>Sophisticated Means</u>: That the defendant's offense level shall be increased by two (2) levels pursuant to Section 2B1.1(b)(9) because (a) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials, and (b) the offense otherwise involved sophisticated means.
> (d) <u>Role in the Offense</u>: That the Defendant's offense level shall be increased by three (3) levels

>    pursuant to ... Section 3B1.1(b), because the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive....
>
> Money Laundering Conspiracy
> (f) <u>Base Offense Level</u>: That the **base offense level shall be derived from either Section 2S1.1(a)(1) or Section 2S1.1(a)(2);**
> (g) <u>Value of the Laundered Funds</u>: That the value of the laundered funds is between $2,500,000 and $7,000,000. This figure reflects the health care fraud proceeds, known as the date of this agreement, that were laundered through the corporate bank accounts of Universal Moneyfast Inc. and Rapid Trans Solutions Inc. **This figure is separate and distinct from the fraudulent billings for health care items and services by Magestic Group Services, Inc. and Ziallet Services, Inc., referenced in 7(b) above.**
> (h) <u>Role in the Offense</u>: That the Defendant's offense level shall be increased by three (3) levels pursuant to ... Section 3B1.1(b), because the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive....

(09-20523 Crim-DE# 135) (emphasis added).

At the September 22, 2009, Dazza confirmed that: he understood the charges, maximum penalties and fines, written plea agreement and factual proffer; the plea agreement contains the parties' whole agreement; the factual proffer (Civ-8-1 at 49) is true; he was fully satisfied with counsel; and he was freely and voluntarily pleading guilty because he is guilty. (Civ-DE# 13-1 at 1, 31, 33-36, 50-54). The Court found the plea was freely and voluntarily entered and accepted Dazza's guilty plea. (Civ-DE# 13-1 at 54-55).

The PSI calculated the base offense level for Count (2),

conspiracy to commit **health care fraud**, as six, added eighteen levels for a loss between $2,500,000 and $7,000,000, added two levels for relocating a fraudulent scheme to another jurisdiction to evade law enforcement, three levels for being a manager or supervisor of an activity involving five or more participants, two levels for obstruction of justice, and thee levels for making a false statement resulting in a new case (09-20609) while on release. (PSI ¶¶ 89-95). This resulted in an adjusted offense level of thirty-four for the health care fraud, Count (2). (PSI ¶ 96).

The PSI calculated the base offense level for Count (11), conspiracy to commit **money laundering**, under Guidelines Section 2S1.1(a)(2), as eight plus eighteen levels for the corresponding value of funds of between $2,500,000 and $7,000,000, resulting in a base level of twenty-six. (PSI ¶ 97). The PSI added four levels because the defendant was in the business of money laundering, three levels because he was a manager or supervisor of an activity involving five or more people, two levels for obstruction of justice, and thee levels for making a false statement resulting in a new case (09-20609) while on release. (PSI ¶¶ 98-102). This resulted in an adjusted offense level subtotal of 38 for the money laundering charge, Count (11). (PSI ¶ 38).

A multiple count adjustment placed Group One in a health care fraud unit, and Group Two in a money laundering unit, resulting in a total of two units. (PSI ¶¶ 104-105). Two points were added to the money laundering offense level of thirty-eight, resulting in a combined adjusted offense level of forty. (PSI ¶ 109). Three points were deducted for acceptance of responsibility and assistance, resulting in a total offense level of thirty-seven. (PSI ¶ 113); see (PSI addendum). Based on a total offense level of thirty-seven and a criminal history category of I, the guideline imprisonment

range was 210-262 months, supervised release between two and three years, fines between $20,000 and $200,000, and restitution. (PSI ¶¶ 162-163, 166, 170, 172).

Dazza filed objections to PSI through counsel. (09-20523 Crim-DE# 159 at 1). In regards to Count (11), the money laundering offense, he argued the base offense level should be six under Guidelines Section 2S1.1(a)(1) (rather than eight under Guidelines Section 2S1.1(a)(2)), and eighteen levels should be added for the value of funds laundered more than $2,500,000 and less than $7,000,000 (rather than 26 points), resulting in offense level of 24. After deducting three levels for acceptance of responsibility, the adjusted offense level should be thirty-three (rather than thirty-eight). In regards to the multiple count adjustment, counsel argued the closely related counts of healthcare fraud and money laundering should be grouped as one group rather than two should pursuant to Guidelines Section 3D1.2(a)-(c) and 3D1.3. Accordingly, the adjusted offense level for money laundering should be the applicable combined adjusted offense level of thirty-three (rather than forty), resulting in an advisory guideline range of 135-168 (rather than 235-293).

The Government filed objections to PSI to clarify factual allegations. (09-20523 Crim-DE# 170 at 1); see (PSI addendum). It also filed a response to Dazza's objections. (09-20523 Crim-DE# 179). With regards to the base offense level for the money laundering offense, the Government argued the appropriate level is eight because money laundering is completely separate from his health care fraud, and the laundered funds were not derived from fraud scheme and involved separate "pots" of fraud proceeds. (09-20523 Crim-DE# 136, ¶ 7(b), (g)). As to grouping, the Government argued the money laundering and fraud offenses are factually

6

different and cannot be grouped under 3D1.2 because: Dazza's money laundering and health care fraud offenses are not of the same type and warrant incremental punishment and the offenses involved different victims (insurance companies vs. society at large), distinct offense conduct, and separate pots of money. The Government also filed a motion to reduce Dazza's sentence by 15% under Guidelines Section 5K1.1 for cooperation. (09-20523 Crim-DE# 187).

At the sentencing hearing, Dazza stated he had the opportunity to receive and go over PSI and discuss it with lawyer. (Civ-DE# 8-1 at 70). Nothing was incorrect as to background, criminal history computation, or offense description. (Civ-DE# 8-1 at 71). Counsel then withdrew the objection to the base offense level calculation as follows:

> MR. MATTERS: Judge, based on my conversations with Mr. Stuphauzer yesterday, we indicated to him that after reviewing his response to our objections based on calculations alone that we were in agreement and we would be withdrawing our objections as to the calculations, leaving the guideline range of a level 37, which would start at 210 to --
> THE COURT: 262.
> MR. MATTERS: - 262. That's correct, Judge.
> THE COURT: So it's a level 37 with a Criminal History Category of a I, correct?
> MR. MATTERS: Yes, ma'am.
>     ...
> THE COURT: ... And the government agrees that it's a total offense level of 37 and a Criminal History Category of I, which provides a guideline range of 210 to 262 months?
> MR. STUMPHAUZER: We agree, Your Honor.
> THE COURT: I also understand that the government has filed a 5K as to Mr. Alyd Dazza recommending 15 percent.
>     And I also need to address with Mr. Alyd Dazza his conviction in the obstruction case, which is 09-20609. And so as I structure his sentence there is a portion that has to be allotted to Counts 2 and 11, and a portion

>       that has to run consecutive that is allotted to Count 2
>       in the criminal case 20609, the obstruction of justice.
>       MR. MATTERS: That's correct, Judge.
>       THE COURT: Okay.
>            And I did read the government's memorandum as to the
>       5K –
>       COURT INTERPRETER: Excuse me, Your Honor, but one of the
>       defendants is having trouble with his equipment.
>       THE COURT: Okay.
>       COURT INTERPRETER: Thank you. Forgive me.... It is
>       resolved, Your Honor.
>       ...
>       THE COURT: Okay. Just so we can summarize, because I –
>       can you tell me when you stopped hearing, what were we
>       talking about?
>       MR. A. DAZZA: My guideline level.
>       THE COURT: The guideline level is a total offense level
>       of a 37 with a Criminal History Category of a I, which
>       provides a guideline range of 210 to 262 months; that
>       within that guideline I need to apportion the sentence so
>       that it reflects the penalty for Counts 2 and 11 in
>       docket number 09-20523, and those two counts are each a
>       maximum of ten years. So I will need to stack the
>       sentences as to those two counts, the 120 months as to
>       one count, an additional amount to the next count, and
>       then after I deal with Counts 2 and 11, I need to impose
>       a sentence that will run consecutive to the penalties for
>       Counts 2 and 11 to reflect the sentence for case number
>       09-20609. That's what I do mechanically. But the bottom
>       line is that the sentence has to be within that guideline
>       range of 210 to 262 months. So for practical purposes
>       that is your guideline range. It is just that the
>       Sentencing Guidelines and the statutes require me to make
>       some apportionments; is that clear?
>       MR. A. DAZZA: Yes, Your Honor.

(Civ-DE# 8-1 at 29-82).

The Government recommended a 15% reduction for cooperation. The Court noted, however, that Dazza was less than candid with federal agents, making it hard to recover assets and leading to an obstruction of justice charge. (Civ-DE# 8-1 at 122).

Dazza expressed remorse and apologized to the Court,

8

prosecutor, and victims. (Civ-DE# 8-1 at 123). Defense counsel argued Dazza should receive a sentence reduction of at least 20% because of his substantial and worthwhile assistance. (Civ-DE# 8-1 at 133). He introduced several members of Dazza's family were present in Court and ready to assist him when the time comes and he rejoins society. (Civ-DE# 8-1 at 124). Counsel argued for a reduced sentence, stating Dazza was originally represented by different counsel, was truthful and forthcoming from the time counsel's firm became involved, took a lie detector test since the time new counsel came in, took the right steps to cooperate with the government and begin rehabilitation, and returned most of the money he wrongfully withdrew. (Civ-DE# 8-1 at 128, 131). Counsel noted Dazza's cooperation saved the Government three to five years in costs and investigation. (Civ-DE# 8-1 at 130). Counsel argued Dazza's sentence reduction should not be lessened due to his obstruction because that charge was already accounted for in the guidelines, raising his range by approximately eight years. (Civ-DE# 8-1 at 130-31).

The Court had been contemplating a 10% reduction but instead decided to apply a 15% reduction pursuant to the Government's recommendation and defense counsel's argument. The Court found the low end of guidelines is appropriate and imposed a sentence of 179 months (120 months for the health care fraud offense, fifty months for the money laundering offense, consecutive, plus nine months consecutive for the obstruction case) followed by three years of supervised release. (Civ-DE# 8-1 at 144); (09-20609 Crim-DE# 46, 48). The Court imposed restitution in the amount of $7,299,883.67. (09-20523 Crim-DE# 217, 232).

Dazza filed the instant motion to vacate on February 9, 2011.

## IV. Statute of Limitations

The Government concedes the instant motion was timely filed.

## V. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a); see Hill v. United States, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill, 368 U.S. at 428.

To prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). In the context of sentencing, a defendant is required to prove that, if counsel had not performed deficiently, the result of his sentencing proceeding would have been different. Glover v. United States, 531 U.S. 198, 203-204 (2001); Forrester v. United States, 349 Fed. Appx. 528 (11th Cir. 2009).

<u>VI. Discussion</u>

(1) <u>Base Offense Level</u>

Dazza contends counsel was ineffective for withdrawing a meritorious objection that the PSI's base offense level should be six levels rather than eight for the money laundering offense.

The plea agreement provided the base offense level for the money laundering count would be calculated under Sentencing Guidelines Section 2S1.1(a)(1) or (2). Those subsections provide:

> Base Offense Level:
>
> (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3[3] (Relevant Conduct)); and (B) the offense level for that offense can be determined; or
>
> (2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

U.S.S.G. § 2S1.1(a).

For subsection (a)(1) to apply,

---

[3] Section 1B1.3 addresses relevant conduct (factors that determine the guideline range). It provides as follows with regards to Chapters Two (Offense Conduct) and Three (Adjustments):
   Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
    (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ...
   that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
U.S.S.G. § 1B1.3(a)(1)(A).

> the defendant must have committed the underlying offense or be accountable for the underlying offense under § 1B1.3(a)(1)(A). The fact that the defendant was involved in laundering criminally derived funds after the commission of the underlying offense, without additional involvement in the underlying offense, does not establish that the defendant committed, aided, abetted, counseled, commanded, induced, procured or willfully caused the underlying offense.

U.S.S.G. § 2S1.1, App. Note 2.

On the other hand, Subsection 2S1.1(a)(2) applies:

> in any case in which (i) the defendant did not commit the underlying offense; or (ii) the defendant committed the underlying offense (or would be accountable for the underlying offense under § 1B1.3(a)(1)(A)), but the offense level for the underlying offense is impossible or impracticable to determine.

U.S.S.G. § 2S1.1, App. Note 3.

The record reflects that Dazza's base offense level was correctly calculated. The written plea agreement specifically states that Dazza laundered funds obtained through check cashing companies that were totally unrelated to his healthcare fraud. Because he was not alleged to have committed the underlying offense to which the money laundering was related, Subsection (a)(1) was inapplicable and Subsection (a)(2) was the appropriate method for calculating his base offense level. The PSI correctly calculated Dazza's money laundering offense under Subsection (a)(2) as eight levels, plus eighteen levels corresponding to the amount of funds involved (between $2,500,000 and $7,000,000). See U.S.S.G. § 2B1.1(b)(1)(J). Dazza conclusively contends counsel should have insisted the base level should have been calculated pursuant to Section 2S1.1(a)(1), however, he fails to explain why subsection (a)(1) was more appropriate, or why subsection (a)(2) was

erroneous.

Counsel was not deficient for withdrawing the objection to the base level scoring because Subsection (a)(1) was not applicable. Further, there is no reasonable probability that the outcome of sentencing would have been different had counsel asserted this meritless argument. He cannot be deemed ineffective under these circumstances. See Knowles v. Mirzayance, 556 U.S. 111 (2009)(defense counsel not required to pursue every claim or defense, regardless of its merit, viability or realistic chance for success); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

(2)   Multiple Count Adjustment

Dazza argues counsel was ineffective for withdrawing a meritorious objection to the PSI's two-level increase for a multiple count adjustment, and failing to insist that the counts be grouped.

The Guidelines provide as follows with respect to grouping closely related counts:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
>  (a) When counts involve the same victim and the same act or transaction.
>  (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>  (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the

> counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.
>
> Offenses covered by the following guidelines are to be grouped under this subsection:
> ...
> 2B1.1[4]
> 2S1.1[5]
> ....

U.S.S.G. § 3D1.2.

"Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) **if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection**." U.S.S.G. § 3D1.2, App. Note 6 (emphasis added). Therefore, "the mere listing of both of these guidelines as offenses that 'are to be grouped' does not automatically necessitate grouping." United States v. McClendon, 195 F.3d 598, 601 (11th Cir. 1999) (quoting United States v. Harper, 972 F.2d 321, 322 (11th Cir. 1992)). Instead, "money laundering and fraud 'otherwise meet the criteria for grouping' and the remaining question is whether, under the particular facts of

---

[4] Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage of Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States.

[5] Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity. The application notes for this subsection provide that, "[i]n a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense **from which the laundered funds were derived**, the counts shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely Related Counts)." U.S.S.G. § 2S1.1, App. Note 6 (emphasis added).

this case, are the offenses closely related." McClendon, 195 F.3d at 602.

Dazza's health care fraud and money laundering offenses do not meet the criteria for grouping. Dazza pled guilty in Count (2) to conspiring to commit health care fraud based on between $2,500,000 and $7,000,000 in fraudulent billings for health care items and services that were submitted to Medicare Advantage programs by Magestic Group Service, Inc. and Ziallet Services, Inc. (09-20523 Crim-DE# 135 ¶ 7(b)). He also pled guilty in Count (11) to money laundering conspiracy for between $2,500,000 and $7,000,000 in health care fraud proceeds laundered through the corporate bank accounts of Universal Moneyfast Inc. and Rapid Trans Solutions Inc. (09-20523 Crim-DE# 135 ¶ 7(g)). The written plea agreement specifically provided that the money laundering figure "is separate and distinct from the fraudulent billings for health care items and services by Magestic Group Services, Inc. and Ziallet Services, Inc., referenced in 7(b) above." (09-20523 Crim-DE# 135 ¶ 7(g)).

The health care fraud and money laundering counts expressly involved two separate actions or transactions. They also involved different victims; health insurance providers were the victims of the health care fraud, but society at large was the victim of the money laundering. Nothing in the record suggests the health care fraud and money laundering were part of a common plan or scheme. Neither of the counts embodies conduct that is treated as an offense characteristic in the other. See (PSI ¶¶ 90-98). Further, the two offenses involved separate pools of money and do not rely on each other for scoring. See U.S.S.G. §§ 2B1.1, 2S1.1. Therefore, even though the health care fraud and money laundering offenses "are to be grouped" under subsection (d), they are not closely related offenses under the facts of this case. See United States v.

Covington, 565 F.3d 1336 (11th Cir. 2009) (conspiracy and murder for hire charges were properly grouped separately from felon in possession of a firearm because they had different victims, occurred at different times, and did not have a common criminal objective); McClendon, 195 F.3d 598 (11th Cir. 1999) (fraud and money laundering were not closely related where money was not laundered to perpetuate the fraud); United States v. Jenkins, 58 F.3d 611 (11th Cir. 1995) (offenses related to transporting stolen goods and illegal monetary transactions were not closely related where victims were different, the offenses involved different criminal conduct, and the offense level for transporting stolen goods did not determine the offense level for the monetary transaction offenses).

Counsel was not deficient for withdrawing the grouping objection because grouping was not appropriate. Further, there is no reasonable probability that the outcome of sentencing would have been different had counsel asserted this meritless argument. He cannot be deemed ineffective under these circumstances. See Knowles, 556 U.S. at 111; Chandler, 240 F.3d at 917.

(3) Mitigating Evidence

Dazza argues counsel was ineffective for failing to present mitigating factors warranting a downward departure, such as Dazza's extraordinary acceptance of responsibility.

The suggestion that counsel should have sought a downward departure due to Dazza's "extraordinary acceptance of responsibility" is legally faulty. The Sentencing Guidelines specifically prohibit a court from departing based on acceptance of responsibility:

PROHIBITED DEPARTURES. – Notwithstanding subsections (a)

and (b) of this policy statement, or any other provision in the guidelines, the court may not depart from the applicable guideline range based on any of the following circumstances:
...
   (2) The defendant's acceptance of responsibility for the offense, which may be taken into account only under § 3E1.1[6] (Acceptance of Responsibility)....

U.S.S.G. § 5K2.0(d).

In the instant case, Dazza received a reduction of three levels due to acceptance of responsibility under Section 3E1.1. (PSI ¶¶ 111-112). Acceptance of responsibility was fully taken into account and a downward departure was expressly prohibited by the Guidelines. U.S.S.G. § 5K2.0(d). Counsel cannot be deemed ineffective for failing to pursue this meritless argument. See Knowles, 556 U.S. at 111; Chandler, 240 F.3d at 917.

Dazza's suggestion that counsel should have also pursued other unspecified grounds for departure is too vague to support relief. Moreover, this argument is refuted by the record which reveals defense counsel zealously pursued a 20% downward departure based on

---

[6] Section 3E1.1 provides for acceptance of responsibility as follows:

   (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

   (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

Dazza's assistance. Counsel also attempted to minimize Dazza's bad acts by arguing he was being adequately punished for his obstruction and had returned most of the money he surreptitiously withdrew. Counsel also noted that Dazza had several family members present in court who would assist him in rejoining society at the appropriate time. Counsel's arguments were successful. The Court granted Dazza a 15% reduction - rather than the 10% reduction it had contemplated - based on counsel's efforts. (Civ-DE# 8-1 at 144). He cannot be deemed ineffective under these circumstances.

### VII. Conclusion

Based on the foregoing, it is recommended that the motion to vacate be denied, and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 12th day of August, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Alyd Dazza, *pro se*
    Reg. No. 86248-004
    FCI - Miami
    Federal Correctional Institution
    Inmate Mail/Parcels
    PO Box 779800
    Miami, FL 33177

    Adam Schwartz
    United States Attorney's Office
    99 NE 4 St.
    Miami, FL 33132

Ryan K. Stumphauzer
United States Attorney's Office
99 NE 4 St.
Miami, FL 33132

Anne Ruth Schultz
United States Attorney's Office
99 NE 4 St.
Miami, FL 33132